IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRA WEINER | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | NO. 13-CV-02849 |
|     Defendant. | : | |

**RICHARD A. LLORET**                                                           **December 29, 2014**
**U.S. Magistrate Judge**

## OPINION

Defendant, the United States of America, has filed a Partial Motion to Dismiss all claims arising from and relating to Ira Weiner's ("Plaintiff") incarceration at MDC Brooklyn, USP Canaan, and/or FCI Fort Dix on the grounds that he has failed to exhaust his administrative remedies. *See* Memorandum in Support of Defendant United States of America's Partial Motion to Dismiss ["Motion to Dismiss"], Doc. No. 17, at 1. Both parties have consented to conduct all proceedings in this matter before me pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* Consent to Jurisdiction by US Magistrate Judge, Doc. No. 24. After careful consideration of the Government's Motion to Dismiss, along with supplemental briefing provided by both parties, I deny this motion to dismiss for the reasons discussed below.

### I. Factual and Procedural Background

Plaintiff filed this Complaint on May 23, 2013 against a number of government officials and physicians of the Federal Bureau of Prisons ("BOP"). *See* Complaint, Doc. No. 1. Plaintiff was incarcerated beginning on or about January 25, 2010 and initially designated to FCI Fort Dix, in Fort Dix, New Jersey. *Id.* ¶ 36. Throughout his period of incarceration, he was transferred to MDC Brooklyn, in Brooklyn, New York for two

weeks in January of 2011, then to USP Canaan in Waymart, Pennsylvania for another three weeks in February of 2011, until he was finally designated at USP Loretto, in Loretto, Pennsylvania from February 18, 2011 to his release on October 9, 2012. *Id.*

Shortly after his incarceration at Fort Dix, Plaintiff noticed that he had problems with his left toe and acute depression, along with visible issues related to his mobility, balance, and gait. *Id.* ¶¶ 36-37. While he complained to medical staff at Fort Dix, they only provided him with medication to treat his depression, even as he developed severe pain in his lower back, which by December of 2010 had morphed into an inability to control his left leg or maintain his balance. *Id.* ¶¶ 40-43. He alleges that he made repeated, written requests to Fort Dix medical staff that went unanswered or were otherwise delayed. *Id.* ¶¶ 45-47. Following his transfer to the Brooklyn facility, he was finally scheduled for an examination with a doctor which happened to occur on the same day of his transfer to Canaan. *Id.* ¶ 49. As a result, a medical examination never took place. *Id.*

When he was transferred to the Canaan, Pennsylvania facility, Plaintiff claims that the BOP failed to perform an intake examination even though he was unable to walk and could not balance properly, leading him to frequently fall and suffer contusions and bruises. *Id.* ¶ 50. Once he was transferred to the Loretto facility on February 18, 2011, he once again made overtures to prison staff to address his severe pain in his left leg and back and requested a neurological evaluation. *Id.* ¶ 51. These frequent requests are pertinent as the Plaintiff is a practicing osteopathic physician who would have had special knowledge related to his condition. *Id.* ¶ 52. While medical staff examined him following his request, Plaintiff claims they failed to address a number of problems related to his ability to walk or balance and did not provide an adequate

medical examination. *Id.* ¶ 54. This culminated in a respiratory infection and a fall that fractured his left ankle. *Id.* ¶¶ 55; 61. With his condition worsening, the Plaintiff became unable to use the toilet and frequently missed meal times due to his inability to walk. *Id.* ¶¶ 63-64. Throughout the summer months of 2011, Plaintiff experienced spasms in his legs and lower back. *Id.* ¶¶ 65-66. Because of the delay in treatment, the Plaintiff alleges that he will be bound to a wheelchair for the rest of his life. *Id.* ¶ 67.

On February 22, 2011, Defendant Steven Burk, a physician's assistant, informed the Plaintiff that he would discuss any of the Plaintiff's complaints, findings, and other medical issues with Defendant Michael Cash, the Clinical Director of Medical Services at Loretto Prison. *Id.* ¶ 84. No action was taken until May 25, 2011, when Cash sent a request for MRI to the Utilization Review Committee of Loretto Prison, a Committee where he sits as Chairman. *Id.* ¶ 94. An MRI was finally performed on November 16, 2011. Throughout these delays, medical staff at Loretto believed Weiner was malingering or otherwise faking an illness in order to secure some kind of gain. *Id.* ¶ 97.

In a letter from July 19, 2011,[1] Plaintiff corresponded with Dr. Roy T. Lefkoe, an orthopedic surgeon who had examined him in the past. *Id.* ¶ 73. Dr. Lefkoe urged the Plaintiff to seek medical attention and faxed a letter to Rear Admiral Newton Kendig, chief of the BOP Medical Staff. *Id.* ¶¶ 74-75. Another evaluation prepared by Dr. Garry Lustgarten, M.D., opined that the Plaintiff may be suffering from a form of amyotrophic lateral sclerosis ("ALS") and recommended a prompt neurological evaluation. *Id.* ¶ 77. Despite these letters addressing a course of treatment, no one provided the Plaintiff with the requested medical services. *Id.* ¶ 82.

---

[1] In paragraph 73 of the complaint, Plaintiff alleges that this letter was from July 19, 2012. *See* Complaint ¶ 73. However, the attached Exhibit A dates the letter on July 19,

By January 10, 2012, Defendant Cash conceded the Plaintiff might be suffering from ALS, but stated that there was no effective medical treatment and no need for additional testing. *Id.* ¶ 98. In fact, it was later determined that the Plaintiff was suffering not from ALS, but PLS—Primary Lateral Sclerosis. *Id.* ¶ 100. That condition results in the death of nerve cells in muscles and involves the degeneration of spinal motor neuron which also occurs in ALS. *Id.* The crux of Plaintiff's argument is that he would have had a diagnostic work-up a full 3 year earlier than he was able to do, but was delayed by the Defendants' failure to acknowledge and treat his conditions. *Id.* ¶ 102. Plaintiff filed suit under various federal causes of action, including 42 U.S.C. § 1983, general negligence, a failure to train, supervise, or regulate staff claim, malpractice, and an Americans with Disabilities Act under 42 U.S.C. §§ 12101, 12131, *et seq.* Pendant state claims include intentional infliction of emotional distress and negligent infliction of emotional distress.

In response to the complaint, the Government filed a partial motion to dismiss on "all claims airing from or relating to Plaintiff's incarceration at MDC Brooklyn, USP Canaan, and/or FCI Fort Dix for failure to exhaust administrative remedies." Motion to Dismiss, at 1. The Government claimed that the Plaintiff only exhausted his administrative remedies for his claims involving incarceration at FCI Loretto. *Id.* I requested additional briefing on the Government's Motion to Dismiss, specifically related to the pre-indictment notice required by the Federal Tort Claims Act (FTCA). *See* Order of November 14, 2014, Doc. No. 39, at 1. At oral argument on November 13, 2014, I requested parties discuss my ability to review evidence beyond the pleadings pursuant to Rule 12(b)(1) dismissal actions, depending on the nature and scope of the claim in

---

2011. I will assume that this was a typo on the Plaintiff's part.

question. If the grounds for dismissal are rooted in "factual" challenges, I may review evidence outside of the pleadings. *See id.* at 1-2; *see also U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). If the grounds for dismissal are "facial," I need to only examine the pleadings in a light most favorable to the plaintiff. *See* Order of November 14, 2014, Doc. No. 39 at 2 (citing *Atkinson*, 473 F.3d at 514).

## II. Discussion

Central to any tort claim asserted against the United States is the requirement that an individual must first present that claim to a federal agency and be denied before seeking a remedy in the court system. *See* 28 U.S.C. § 2675(a). Normally, the United States may only be sued if it has waived its sovereign immunity by consenting to suit. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The presentation requirement is an integral party of the United States' waiver of sovereign immunity and its consent to be sued. *See Bialowas v. United States*, 443 F.2d 1047, 1048-49 (3d Cir. 1971). The requirement is therefore jurisdictional and non-waiveable. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009)).

Section 2675(a) is satisfied assuming there is 1) sufficient notice allowing the agency to investigate the claims and 2) a monetary value placed on the claim itself. *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 958-59 (3d Cir. 1982). These notice requirements in administrative matters need not provide exhaustive detail, but plaintiffs may not present a claim to an agency only to pivot to other, disparate claims upon reaching the courts. *See Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003). In addition, a plaintiff must file his or her administrative claim "in writing *to the appropriate Federal agency* within two years after such claim accrues. . . ." 28 U.S.C. § 2401(b) (emphasis added).

Also instructive is information found within the Code of Federal Regulations. Portions of the Regulations reading, in relevant part,

> [f]or purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented *when a Federal agency* receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a) (emphasis added). This section also allows for a Federal agency to transfer claims "to the appropriate agency" if the proper agency can be identified. 28 C.F.R. § 14.2(b). This administrative process underscores the policy favoring administrative review and possible settlement rather than adjudicating the matter in the court system. *See Rosario v. Am. Exprot-Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1233 (3d Cir. 1976). Failing to follow these statutory guidelines may result in a barred claim. *Farr v. United States*, 580 F.Supp. 1194, 1197 (E.D. Pa. 1984).

Federal Rule of Civil Procedure 12(b)(1) permits a party to assert a lack of subject-matter jurisdiction as a defense. *See* Fed. R. Civ. P. 12(b)(1). This section applies, in this case, because the presentment requirement of section 2675(a) is jurisdictional and non-waiveable. *See* Motion to Dismiss at 3 (citing *McDevitt v. United States Postal Serv.*, 963 F. Supp. 482, 484 (E.D. Pa. 1997)). In any case involving a waiver of the federal government's sovereign immunity, a claimant must strictly comply with the terms presented by Congress. *See McDevitt*, 963 F. Supp. at 484 (citing *Pascale v. United States*, 998 F.2d. 186, 193 (3d Cir. 1993); *Livera v. First National State Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir. 1989); *Peterson v. United States*, 694 F.2d 943, 944-45 (3d. Cir. 1982)).

6

### A. *The Parties' Arguments*

The gist of the Government's argument is that "Plaintiff's claims, insofar as they are based on any act or omission relating to or arising from his incarceration at MDC Brooklyn, USP Canaan or FCI Fort Dix, must be dismissed for lack of jurisdiction due to Plaintiff's failure to give adequate notice to the United States by way of administrative claim." *See* Motion to Dismiss at 3, 4. At the outset, both parties agree that I may look outside of the pleadings to decide this motion. *See* Supplemental Memorandum in Further Support of Defendant United States of America's Partial Motion to Dismiss ["Def. Br."], Doc. No. 40, at 2; Plaintiff's Supplemental Memorandum in Response to Defendant's Partial Motion to Dismiss ["Pl. Br."], Doc. No. 42, at 1.

The Government focuses on two questions: 1) whether the plaintiff's administrative claim satisfied the FTCA's presentment requirements with respect to claims arising outside of the BOP facility at FCI Loretto and 2) whether the plaintiff filed a claim with the BOP concerning his incarceration at other facilities other than FCI Loretto within two years of the claim's accrual. *See* Def. Br. at 3. The Government argues that if I resolve the first factor in its favor, "then it is too late for the plaintiff to bring an administrative claim addressing his incarceration at FCI Fort Dix, MDC Brooklyn, and USP Canaan, where plaintiff was incarcerated well over two years ago." *See id.* at 4. Thus, the question is whether the plaintiff's initial administrative claim satisfied the FTCA's presentment requirements. Plaintiff contends that it does. Supplemental Memorandum in Response to Defendant's Partial Motion to Dismiss, Doc. No. 4, p. 3. While the question is closer than the Plaintiff would acknowledge, I conclude that his Form 95 does comply with the presentment requirements of 28 U.S.C. § 2675.

7

### B. *Tucker* and *Roma*

The Government cites to *Tucker* and *Roma* in support of their claim that the Plaintiff has failed to meet his presentment requirements under the FTCA. *See* Motion to Dismiss at 4. In *Tucker*, plaintiff alleged she suffered injuries in an auto accident involving the United States Postal Service. 676 F.2d at 955. The district court held that plaintiff's claim notice had not satisfied 28 U.S.C. § 2675, and dismissed the complaint, but the Third Circuit reversed and remanded. *Id.* The government acknowledged it had received a Form 95, but argued it had not received supporting documentation fleshing out the circumstances of the claim. *Id.* at 956. As in the present case, the issue in *Tucker* was whether the Form 95 gave the government enough information about the claim to preserve it for litigation. *Tucker* held that if the "claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim" the Form 95 complies with section 2675. *Id.* at 959 (quoting from S.Rep. at 7, *reprinted in* (1966) U.S. Code Cong. & Admin.News at 2517).

There were two purposes Congress had in mind when it passed section 2675, first, efficient claims processing, and second, to provide "for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." *Id.* at 958 (internal quotations and citations omitted). The notice requirements of section 2675 are "minimal," a point emphasized twice in a few paragraphs in *Tucker*. *Id.* The purpose of the presentment requirement is only the giving of "notice of an accident within a fixed time." *Id.* (quoting S.Rep. at 7, *reprinted in* (1966) U.S. Code Cong. & Admin.News at 2517). Before section 2675 was passed in 1966, plaintiffs were required to file a complaint in federal court, after which the matter was referred by the United States Attorney to the appropriate

8

federal agency to assess. *Id.* This was hugely inefficient. *Id.* Section 2675 was designed to promptly bring the incident to the attention of the proper federal agency, without putting plaintiff and the United States through the potentially unnecessary expense and waste of time occasioned by filing a complaint in federal district court. *Id.* The idea was to foster settlement before litigation. *Id.* at 956. The question here is whether plaintiff's claim met this "minimal" presentment standard.

*Roma* cautions that plaintiffs may not "present one claim to the agency and then maintain suit on the basis of a different set of facts." 344 F.3d at 362. In *Roma* a firefighter injured battling a blaze at a United States Navy facility failed to put the government on notice because his Form 95 claimed injury due to smoke inhalation, but did not allege negligence on the part of federal employees in failing to prevent the fire in the first place. *Id.* at 363. "In other words, the allegation that an NAES Lakehurst firefighter negligently caused Roma's injuries by ordering him to remove his [protective mask] did not provide any notice to the United States that it not only had to investigate the way the firefighting was handled by federal employees, but that it also had to engage in a much broader investigation concerning whether the negligence of other, non-firefighter, federal employees may have contributed to the start of the fire itself." *Id.*

Plaintiff here told the government in his Form 95 that he was seen in Dr. Michael Cash's office on May 25, 2011, which "addressed 5 months of requests, sick-call visits, complaints and administrative remedy requests." Doc. No. 17, at 9. The claim mentioned that he suffered from a "progressive 5 month deterioration," as well as a fractured ankle and serious lung infection. Five months counted backward from May 25, 2011 puts the start of the deteriorating condition at December 25, 2010. Plaintiff was still at Fort Dix at that time. Doc. No. 1, Complaint ¶ 36. He was transferred to MDC

Brooklyn, in Brooklyn, New York for two weeks in January of 2011, then to USP Canaan in Waymart, Pennsylvania for another three weeks in February of 2011, until he was finally designated at USP Loretto, Pennsylvania from February 18, 2011 to his release on October 9, 2012. *Id.* Claimant (*sans* lawyer) said in his Form 95 that he held FCI Loretto "and the BOP responsible." Doc. No. 7, Exhibit "A." Plaintiff's Form 95 asserts a basis for the claim, the nature and extent of the injury, and a list of witnesses. *See* Motion to Dismiss at 7-11. It also states a claim for damages in the amount of $7,500,000.00. *Id.* at 7.

    A reasonable and prudent examiner of this Form 95 would have understood that plaintiff was complaining that his medical condition had been ignored unjustifiably for many months. Such an examiner would have had sufficient cause to investigate Defendant's medical care during at least the 5 months plaintiff said he was deteriorating, from December 2010, at the time he was still at Ft. Dix, through the time he left USP Loretto. *See Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003) ("if the claim would have been apparent to a 'legally sophisticated reader' of the form, then we will charge the agency with notice of that claim and deem it to have been exhausted.") This is not a circumstance, as in *Roma*, where the nature of the legal theory and germane facts in the lawsuit were entirely different from the ones presented in the Form 95. Here, the BOP was fairly put on notice that Dr. Cash's 15 minute interview was not intended to be the outside boundary of what plaintiff considered culpable neglect, but rather was included to make the point that after 5 months of steady deterioration the "pinnacle" of what the BOP could muster was a 15 minute examination that seemed designed to discount Plaintiff's complaints, rather than get to the bottom of his condition. Doc. No. 17, at 9. *See, e.g. Johnson by Johnson v. United States*, 788 F.2d

10

845, 849 (2d Cir. 1986) (Form 95 that advised Postal Service its letter carrier had molested an infant, but did not mention negligent supervision, sufficed to put the agency on notice of the claim: "a reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession relating to the agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee"); *Rise v. United States*, 630 F.2d 1068, 1071-72 (5th Cir. 1980) (an administrative claim alleging negligent failure to diagnose and treat an illness was sufficient to comprehend a theory of negligent referral to a private hospital and the United States' failure to supervise treatment there).

     While Plaintiff certainly might have identified each instance of claimed negligence with particularity, as a neutral reader of the Form 95 his point seems fairly made to me. The fact that in hindsight the government's very competent litigating arm can legitimately criticize Dr. Wiener's lack of precision is not determinative. Section 2675 was not designed to resurrect common-law pleading. The language of a Form 95 should not be read in its most restrictive possible sense, but in the light of its purpose, which is to notify the agency of the existence of an incident in a timely matter, so the agency can investigate it. Here, the notice served its statutory purpose.

    **C. Only the BOP Needed to be put "On Notice"**

     The Government further argues that the administrative claim addressed treatment at FCI Loretto only and does not take into account the other facilities in which the Plaintiff was incarcerated during his stint in the federal prison system. Motion to Dismiss at 4. While I agree that the Form 95 did not name every facility in which the plaintiff was incarcerated, it did not need to do.

The language of the relevant Code of Federal Regulations and different sections of the United States Code clearly indicate that a "federal agency" must be put on notice, not a "federal facility." A tort claim against the United States must be presented "to the appropriate *Federal agency* . . ." 28 U.S.C. 2401(b) (emphasis added). These claims "shall be presented to the *Federal agency* whose activities gave rise to the claim." 28 C.F.R. § 14.2(b)(1) (emphasis added). The United States cannot be sued until "the claimant shall have first presented his claim to the appropriate *Federal agency*. . . ." 28 U.S.C. § 2675(a) (emphasis added).

While compliance with the statute is required, there is notable flexibility written into the process. For instance, 28 C.F.R. § 14.2(b)(1) permits one agency to transfer a claim "to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." *See* 28 C.F.R. § 14.2(b)(1). The issue is whether the notice fairly permits the government agency to figure out the nature of the claim and get it properly investigated. *See* Pl. Br. at 3-4. Here, the notice is supplied.

**Conclusion**

A partial dismissal of these claims for incidents of negligence outside of the FCI Loretto facility is unwarranted. Plaintiff complied, albeit sparingly, with 28 U.S.C. § 2675(a) by putting the BOP, a federal agency, on notice of the basis and nature of his claim. The Plaintiff's notice also included a precise claim of damages. This was enough. The government's motion will be denied.

                **BY THE COURT:**


         _s/Richard A. Lloret_
         **RICHARD A. LLORET**
         **UNITED STATES MAGISTRATE JUDGE**